UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JIMMY JOE,

                              Petitioner,

        v.

MERRICK GARLAND, *et al.*,

                              Respondents.

Case No. C21-998-MJP-MLP

REPORT AND RECOMMENDATION

## I.       INTRODUCTION

Petitioner Jimmy Joe ("Petitioner") is currently detained by U.S. Immigration and

Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma,

Washington. Petitioner brings this 28 U.S.C. § 2241 habeas action to obtain his release from

detention or a bond hearing because his continued detention has become indefinite pursuant to

*Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). (Pet. (Dkt. # 1) at 3.) Currently before the Court is

the Government's motion to dismiss. (Resp.'s Mot. (Dkt. # 7).) Petitioner filed a response (Pet.'s

Resp. (dkt. # 10)) and the Government has filed a reply (Resp.'s Reply (dkt. # 12)).

Having considered the parties' submissions, the balance of the record, and the governing

law, the Court recommends that Respondents' motion to dismiss (dkt. # 7) and Petitioner's

habeas petition (dkt. # 1) be GRANTED in part and DENIED in part. Specifically, the Court recommends that Petitioner's request for release be DENIED but that he be GRANTED a bond hearing.

## II.     BACKGROUND

Petitioner is a citizen of the Federated States of Micronesia ("Micronesia") from the state of Kosrae. (Kam Decl. (Dkt. # 8) at ¶ 3; Johnson Decl. (Dkt. # 9-1), Ex. A at 1-2.) Petitioner was previously admitted to the United States on August 22, 2003. *Id.* On August 18, 2017, Petitioner was convicted of robbery in the first degree and theft of a motor vehicle and sentenced to 48 months imprisonment. (Kam Decl. at ¶ 4.) On November 15, 2017, Petitioner was convicted of assault in the third degree and sentenced to six months of custody. (*Id.* at ¶ 5.) On March 17, 2020, Petitioner was convicted on possession charges for heroin and sentenced to six months and a day of incarceration. (*Id.* at ¶ 6.)

On October 6, 2020, Petitioner was taken into ICE custody and transferred to the NWIPC. (Kam Decl. at ¶ 7.) On October 22, 2020, Petitioner was served with a Notice to Appear and charged with removal for being convicted of an aggravated felony relating to a theft offense and for a controlled substance conviction. (*Id.* at ¶ 8; Johnson Decl. (Dkt. # 9-2), Ex. B at 1-2.) Due to Petitioner's criminal convictions, he was held under 8 U.S.C. § 1226(c) and was not eligible for bond. (Kam Decl. at ¶ 9.)

On January 20, 2021, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture. (Kam Decl. at ¶ 10.) On February 18, 2021, an immigration judge denied Petitioner's requested relief and ordered Petitioner removed to Micronesia. (*See id.* at ¶ 11; Johnson Decl. (Dkt. # 9-3), Ex. C at 1-2.) Petitioner waived his right to appeal, making this determination Petitioner's final order of removal.

1    On March 24, 2021, ICE sent Petitioner's travel document application to the Micronesia

2    Consulate in Portland, Oregon. (Kam Decl. at ¶ 12.) On May 28, 2021, ICE completed a 90-day

3    Post Order Custody Decision ("POCR") and determined Petitioner's continued detention was

4    appropriate due to public danger and the likelihood of removal. (Kam Decl. at ¶ 14; Johnson

5    Decl. (Dkt. # 9-4), Ex. D at 12.) On June 4, 2021, the Micronesia Consulate forwarded

6    Petitioner's information to the Micronesia COVID-19 Task Force for clearance. (Kam Decl. at

7    ¶ 15.)

8    On July 27, 2021, Petitioner, proceeding *pro se*, filed his habeas petition and a motion to

9    appoint counsel. (Dkt. ## 1-2.) On July 28, 2021, this Court granted Petitioner's motion to

10   appoint counsel and directed service of his habeas petition. (Dkt. ## 4-5.) On September 1, 2021,

11   ICE completed a 180-day POCR and determined that Petitioner's continued detention was

12   appropriate due to public danger and the likelihood of removal. (Hicks Decl. (Dkt. # 13) at ¶ 4.)

13   Per the last update from the parties, Micronesia has travel restrictions as a result of the

14   COVID-19 pandemic that were extended to September 30, 2021. (Kam Decl. at ¶ 17.) However,

15   the parties both acknowledge that Micronesia has an exception to travel restrictions for

16   repatriation of its citizens. (*Id.*; Valencia Decl. (Dkt. # 10-1) at ¶ 3.) On September 24, 2021, the

17   Government submitted its most recent declaration stating that Micronesia had not denied

18   Petitioner's travel document application, and that as of September 9, 2021, the states of Kosrae,

19   Yap, and Pohnpei in Micronesia had resumed repatriation efforts. (Hicks Decl. at ¶ 3.)

20                               **III.    DISCUSSION**

21   **A.    Indefinite Detention**

22   Petitioner first argues his removal is not reasonably foreseeable pursuant to *Zadvydas* due

23   to the uncertainty of Micronesia's repatriation efforts as a result of the COVID-19 pandemic.

REPORT AND RECOMMENDATION - 3

(Pet.'s Resp. at 2-3.) Title 8 U.S.C. § 1231 governs the detention and release of noncitizens who have been ordered removed. Under § 1231(a), the U.S. Department of Homeland Security ("DHS") is required to detain a noncitizen during the 90-day "removal period."[1] 8 U.S.C. §§ 1231(a)(2), (a)(1)(B). The removal period begins on the date Petitioner's removal order became administratively final. *See* 8 U.S.C. § 1231(a)(2)(B)(i). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are determined to "to be a risk to the community or unlikely to comply with the order of removal," or to release them on supervision. 8 U.S.C. § 1231(a)(6). Here, ICE has determined that Petitioner presents a public danger, and therefore, his detention comports with the statute. (*See* Kam Decl. at ¶ 14; Johnson Decl., Ex. D at 12.)

While § 1231(a)(6) authorizes ICE to detain Petitioner, ICE cannot do so indefinitely. In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States and does not permit "indefinite" detention. 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. However, courts undertaking such analysis are advised that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

In this case, Petitioner has failed to demonstrate his removal is not significantly likely to occur in the reasonably foreseeable future. Petitioner's removal order became administratively final on February 18, 2021, and as a result, Petitioner's detention remained "presumptively reasonable" until August 18, 2021. *See Zadvydas*, 533 U.S. at 701. Though the "presumptively reasonable" period has since expired, the Court finds that Petitioner's removal is likely to occur in the reasonably foreseeable future. As noted in the record, ICE has been in regular contact with the Micronesia Consulate since March 2021 to obtain a travel document for Petitioner. (*See* Kam Decl. at ¶¶ 12-13, 15-16; *see also* Johnson Decl., Ex. D at 14-15; Hicks Decl. at ¶ 3.) Specifically, ICE submits it has taken several affirmative steps to obtain a travel document for Petitioner, including having submitted a completed travel document application and responding to the Micronesia Consulate's request for Petitioner's COVID-19 test results. (*See id.*) There is also no evidence in the record that Micronesia, or the state of Kosrae, will refuse to repatriate Petitioner. As acknowledged by the parties, Micronesia has an exception to current COVID-19 travel restrictions for repatriation of its citizens. (*See* Kam Decl. at ¶ 17; Valencia Decl. at ¶ 3.)

While Respondents have not offered a specific date when they expect Petitioner to be removed, the Ninth Circuit has held that uncertainty as to when removal will occur does not establish that detention is indefinite. *Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir.

2008) ("That the detention did not have a certain end date does not change the analysis."); *see also Zadvydas*, 533 U.S. at 702. The Ninth Circuit has explained that detention becomes indefinite where the country designated in the removal order refuses to accept the noncitizen or if removal is barred by the laws of this country. *Diouf I*, 542 F.3d at 1233. Neither situation is present in the instant matter as there are no diplomatic barriers to Petitioner's removal to Micronesia and ICE represents that successful repatriation efforts resumed in the state of Kosrae as recently as September 2021. (*See* Hicks Decl. at ¶ 3.)

Accordingly, the Court concludes Petitioner's removal is significantly likely to occur in the reasonably foreseeable future. Therefore, the Court recommends Petitioner's habeas petition be denied on this claim.

## B.    Bond Hearing

Petitioner's habeas petition alternatively requests a bond hearing.[2] (Pet. at 3.) The Ninth Circuit has held that noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing if removal is not imminent. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011); *see also Aleman Gonzalez v. Barr*, 955 F.3d 762, 765-66 (9th Cir. 2020) (reaffirming *Diouf II*'s holding). Based on the record before the Court, ICE does not currently have a valid travel document for Petitioner and has not yet scheduled a chartered flight to Kosrae

---

[2] Petitioner requests that his bond hearing be conducted "before a neutral arbiter, such as a federal judge." (Pet. at 3.) However, the applicable statute and regulations are clear that the Attorney General, through immigration judges, are to make bond determinations in the first instance. *See* 8 U.S.C. § 1226(a)(2); *see also* 8 C.F.R. § 1003.19(c) ("Applications for the exercise of authority to review bond determinations shall be made . . . [i]f the respondent is detained, to the Immigration Court having jurisdiction over the place of detention."). In addition, the Court notes that federal court review of an immigration judge's discretionary decisions concerning bond is not authorized by statute or regulations. *See* 8 U.S.C. § 1226(e).

despite its efforts to do so. Accordingly, the Court concludes that Petitioner's removal is not imminent and that he is entitled to a bond hearing pursuant to *Diouf II*.

### IV.   CONCLUSION

The Court recommends that Respondents' motion to dismiss (dkt. # 7) and Petitioner's habeas petition (dkt. # 1) be GRANTED in part and DENIED in part. Specifically, the Court recommends denying Petitioner's request for release but ordering the Government to provide him with a *Diouf II* bond hearing within **thirty (30)** days of the order on this Report and Recommendation. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 12, 2021**.

The Clerk is directed to send copies of this Order to the parties and to the Honorable Marsha J. Pechman.

Dated this 18th day of October, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 7